have been something else than the said doubtful assets. Between the time of the notice from the Comptroller, about March 1st, and the assessment, three months expired; so that, if the directors did their duty, they would probably have collected a large part of that which could be collected before the time of the assessment. If the doubtful assets included all of the losses that had occurred at the time of the assessment, then the stock, after the payment of the $97,000 collected, was worth $66 per share, and the plaintiff's loss would be $94 per share; but no proof is presented as to the actual value of the stock at any time after the assessment, except that the collection of the assessment gave it a value of $100 per share.

Under the proof and the rule of damages, I am bound to hold that the plaintiff has suffered damages as claimed in the sum of $4,800, with interest from the time the stock was delivered, July 1, 1904.

Judgment accordingly.

---

GIBBONS v. LEHIGH VALLEY R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1907.)

1. MASTER AND SERVANT—NEGLIGENCE OF MASTER.

Evidence examined, in an action against a railroad company for injuries to an employé, and *held* insufficient to warrant submitting to the jury the question of defendant's negligence.

2. NEGLIGENCE—PLEADING AND PROOF.

Where negligence is charged, the specific acts constituting it should be shown.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 37, Negligence, §§ 200–211.]

Appeal from Trial Term, Erie County.

Action by Richard Gibbons against the Lehigh Valley Railroad Company. From a judgment for plaintiff and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Daniel J. Kenefick, for appellant.

J. H. Metcalf, for respondent.

SPRING, J. The plaintiff, a locomotive engineer in the employ of the defendant, was injured February 5, 1904, while operating his engine on the defendant's track between Buffalo and Niagara Falls, and claims that the defendant is responsible for the injuries sustained by him. The line of the defendant from Buffalo to Niagara Falls consists of two parallel tracks extending in a general northerly and southerly direction. The westerly one of these is for east, or more properly south, bound trains, and is called the "east-bound track"; and the other the west-bound. Tonawanda Junction and Williamsville are two stations, about six miles apart, on this route, and the accident occurred in a cut between these two places. The plaintiff had been running an engine on a passenger train over this route for seven years, and each day made the round trip two or three times. On the

day of the accident and for several days preceding the east-bound track was covered with snow to the depth of several feet, and all the trains used the west-bound track, which had been kept clear of snow. He had passed over the track five times on the day of the accident. About 10 o'clock in the evening he left Buffalo with a passenger train, and when in the cut, as he testified, ran into a pile of snow which covered the engine cab, causing the derailment of the train, and the engine, after going about 1,000 feet, toppled over into a ditch and the plaintiff was seriously injured. There had been no snow on this track on any of the previous trips. During the evening, and up to about the time of the accident a snow plow had been cutting out the snow on the east-bound track. The snow plow, a rotary one with knives, cut the snow and threw it through an adjustable funnel, and all the proof is that this funnel was turned away from the west-bound track. It cleaned out a space extending about 15 to 18 inches beyond the rails on each side, and there was the same width of cut on the west-bound track. The plaintiff had received clearance cards before leaving Buffalo advising him that no orders with reference to his train had been received and implying that he was to make his usual trip, and at Williamsville the order board denoted that he was to continue. He claims that the defendant was negligent in not warning him that the snow had collected on the track where the train was derailed.

The complaint alleges two causes of action. The first one charges that the defendant had "carelessly and negligently thrown" this snow upon the track, and "carelessly and negligently allowed and permitted" it "to remain upon said track," and then alleges the service of the notice in pursuance to the employer's liability act (chapter 600, p. 1748, Laws of 1902). For the second cause of action it is alleged that the train which the plaintiff was operating was run and operated by telegraphic orders issued in the usual manner advising him that the track was clear, and "that said orders so issued to this plaintiff and conductor were false and untrue, and were falsely and untruthfully, carelessly and negligently issued by this defendant, or by and through the carelessness and negligence of its superintendent or foreman or person entrusted with and exercising superintendence over the operation of said train"; that the plaintiff ran his train in reliance upon these orders. No evidence was given showing the way in which the snow came upon the track, if it was there at all. After the snow plow had removed the snow, the space between the tracks, about eight feet, contained a pile of snow about five feet wide at the base and slanting upwards from four to six feet. The gist of the first cause of action was that the snow had been thrown upon the track by the snow plow, but the witnesses testified otherwise; and at the close of the evidence the counsel for the plaintiff "disclaimed a right to recover under the first cause of action." This disclaimer is not very important, as there was no evidence to support the claim. There was no evidence to sustain the charge that the defendant falsely issued the telegraphic orders, which is the gravamen of the second cause of action, and the trial judge expressly charged that no negligence could be founded upon any act or omission of either the train dispatcher or the operator

at Tonawanda Junction. The court allowed the jury to find negligence because the snow was on the track. He stated in his main charge:

"I think it may be said that it is self-evident that according to the testimony, all of the testimony in this case, if there was any snow upon the westbound track, it came from the body of the snowbanks on the one side or other of the tracks, or from both."

There was no evidence that the snow came from either side of the track. The rotary plow was one in common use, was operated in the usual way, and there is no evidence that its impact with the snow on the east-bound track crowded the snow between the tracks on the westbound track, and none which would justify that inference. The jury were left to speculate over the way in which the snow was piled on the track. Negligence is imputed to the defendant, and the specific acts constituting it should have been shown; otherwise, the defendant could not meet the accusation. The complaint alleged one ground of negligence, another was submitted to the jury, and there was no evidence in support of either. The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to the appellant to abide event. All concur.